## ANN H. SHAFNACKER VS. RAYMOND JAMES & ASSOCIATES, INC., & others.[1]

Barnstable. April 9, 1997. - August 14, 1997.

Present: ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Arbitration,* Securities account. *Contract,* Arbitration. *Limitations, Statute of. Securities. Evidence,* Judicial notice, Judicial discretion. *Regulation. Practice, Civil,* Instructions to jury. *Judgment,* Default.

Submission of claims to arbitration is not a sufficient basis to equitably toll the statutes of limitations on those claims during the period of arbitration. [727-729]

A claim for arbitration is not an "action" within the meaning of G. L. c. 260, § 32, so as to allow the commencement of an action on the same claims within the year following. [729-730]

At the trial of a civil action, a Superior Court judge did not err in refusing to take judicial notice of certain regulations of the National Association of Securities Dealers that were not put in evidence. [730-731]

This court declined to consider issues in a civil action raised for the first time on appeal. [731, 733, 735]

In a civil action in which there was no evidence that the defendants had any psychological influence over the plaintiff, the judge correctly declined to instruct the jury based on *Riley* v. *Presnell,* 409 Mass. 239, 245-246 (1991), on the reasonableness of the plaintiff's discovery of her cause of action. [731-732]

At the trial of a civil action, the judge did not abuse his discretion in declining to read to the jury a statement in a joint pretrial memorandum that the parties had agreed to, offered as rebuttal, where the meaning of the statement was uncertain. [732-733]

At the trial of a civil action, the judge did not abuse his discretion in refusing to instruct the jury on apparent authority to enter into a contractual relationship, where there was no evidence of the defendants' acts that would have warranted a finding of apparent authority to bind them. [733-734]

At the trial of a civil action, the judge did not err in denying the plaintiff's request for an instruction on breach of the implied covenant of good faith and fair dealing in circumstances in which the plaintiff had not presented any issue other than a straightforward breach of contract claim. [734]

At the trial of a civil action, the judge did not abuse his discretion in allowing the testimony of a rebuttal witness who was not listed on the pretrial list of witnesses, where the pretrial agreement between the parties stated that rebuttal witnesses need not be listed. [734-735]

---

[1]Investment Management & Research, Inc., Claude V. Lochet, Bucchieri Asset Management, Inc., and Bucchieri Financial Management, Inc.

At a civil trial, the judge's erroneous instruction to the jury that no negative inference should be drawn from a witness's invocation of his Fifth Amendment privilege was not prejudicial, where no reasonable inference related to the issues disputed at trial could be drawn from the witness's refusal to testify. [735-736]

At the trial of a civil action, the judge's instructions to the jury, considered as a whole, adequately explained the plaintiff's burden of proof. [736]

The court stated that "firm and abiding conviction" language, commonly used in jury instructions in criminal cases, should not be used in the civil context. [736-737]

The judge in a civil action seeking damages for negligence and breach of fiduciary duty against investment advisors properly considered the evidence and the jury's verdict to determine the appropriate amount of damages to be assessed against defaulting defendants, and there was no error in the amount of damages the judge awarded. [737]

CIVIL ACTION commenced in the Superior Court Department on December 16, 1993.

The case was tried before *John A. Tierney*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Katherine L. Parks* (*T. Christopher Donnelly* with her) for the plaintiff.

*Kenneth W. Salinger* for Raymond James & Associates, Inc., & another.

LYNCH, J. Pursuant to arbitration clauses contained in her contracts with the defendants, the plaintiff, Ann H. Shafnacker, filed for arbitration with the National Association of Securities Dealers (NASD) against her securities brokers, Raymond James & Associates, Inc. (RJA), and Investment Management & Research, Inc. (IM&R); their representatives, Claude Lochet and Peter Bucchieri (advisors); and an investment firm with which the advisors were associated, Bucchieri & Lochet, Inc. She recovered in part, but NASD concluded that, pursuant to NASD arbitration rules, it lacked jurisdiction over the investments made more than six years before the plaintiff made her claim. The plaintiff then filed a complaint in the Superior Court seeking damages in relation to the claims for which NASD declined jurisdiction. She obtained a default judgment against Lochet; Bucchieri Asset Management, Inc. (BAM); and Bucch-

ieri Financial Services, Inc. (BFS).[2] The jury returned a verdict for the plaintiff against RJA and, IM&R for negligence and breach of fiduciary duty, but the judge thereafter dismissed the claims as barred by the statute of limitations. The plaintiff appealed. Only RJA and IM&R contest the appeal. We granted her application for direct appellate review and affirm.

1. *Facts.* In 1984, the plaintiff, a retired school teacher and social worker, sought investment advice from RJA and IM&R through the advisors. The plaintiff had no prior investing experience and no expertise in the area. In 1985 and 1987, the advisors and the plaintiff entered into an agreement by which "all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration." From 1984 through 1990, the advisors controlled the plaintiff's retirement assets. The plaintiff alleges that the advisors invested in assets which subjected her to an inappropriately high level of risk, that they chose investments which resulted in high fees and commissions for themselves even though there were less expensive alternatives, and that the advisors constantly moved her money between "high load" mutual funds to generate more fees for themselves.

By 1991, the plaintiff discovered the advisors' misdeeds, and, pursuant to the agreement she had signed, submitted a claim to NASD for arbitration. NASD awarded the plaintiff $210,000 for the investments made by the advisors after October, 1985,[3] but declined jurisdiction under § 10304 of the NASD Code of Arbitration Procedure (NASD code) on any claims which arose before that date (six years prior to the filing for arbitration). That section states: "No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations." NASD Manual 7573 (CCH 1996). Section 10304 is not "subject to tolling until the discovery of a claim." *Prudential Sec. Inc.* v. *LaPlant*, 829 F. Supp. 1239, 1243 (D. Kan. 1993). Thus, NASD declined

[2]Bucchieri Asset Management, Inc., and Bucchieri Financial Services, Inc., are two investment firms affiliated with Bucchieri.

[3]The defendants moved to vacate that award in Federal District Court, but that motion was denied.

jurisdiction on all those claims arising from transactions made more than six years prior to the filing of the arbitration claim in October, 1991.

Within six months of the NASD decision, the plaintiff filed a complaint in the Superior Court seeking to recover on those claims barred by § 10304 of the NASD code, alleging breach of fiduciary duty, fraud and deceit, violation of G. L. c. 110A, § 410 (Uniform Securities Act), violation of G. L. c. 93A, breach of contract, and negligence.[4] According to the plaintiff the claim against Bucchieri was dismissed (pursuant to Standing Order 1-88 of the Superior Court, Massachusetts Rules of Court 947 [West 1997]), as she was unable to serve him with process in Massachusetts. BAM and BFS did not file answers, and a default judgment was entered against them. Lochet answered the plaintiff's complaint, but before trial, elected to have a default judgment entered against him as well. The remaining defendants, RJA and IM&R, moved for a directed verdict as to the plaintiff's claim, on the ground that, by entering into the arbitration agreement, the plaintiff had waived any right to a judicial forum. That motion was denied.[5] The jury determined that the defendants were liable for breach of fiduciary duty and negligence, but found for the defendants on all other claims. In response to a special question, the jury determined that the plaintiff knew or reasonably should have known of the defendants' misdeeds by August, 1989. The jury awarded the plaintiff $53,000 in damages. The judge dismissed the claims against RJA and IM&R as barred by the applicable three-year statute of limitations. See G. L. c. 260, § 2A. The contract claim, on which the jury found for the defendants, would not have been time-barred. See G. L. c. 260, § 2 (six-year statute of limitations for contract claims).

2. (a) *Equitable tolling of the statute of limitations.* The plaintiff first argues that the judge should not have dismissed the claims against RJA and IM&R because the statute of limitations should be equitably tolled for the period during which her claim was in arbitration.

---

[4]The judge allowed the defendants' motion for summary judgment on the G. L. c. 93A claim, and no appeal was taken.

[5]That defense has been repeated here, but we conclude that it is unnecessary to address it as we affirm the judgment for the defendants on the grounds relied on by the trial judge. However, on similar facts at least one Federal court has adopted this line of reasoning. See *Kramer* v. *Smith Barney*, 80 F.3d 1080, 1086 (5th Cir. 1996).

The statute of limitations is not tolled by the plaintiff's filing of her arbitration claim. Equitable tolling is used "only sparingly," see *Irwin* v. *Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), and is generally limited to specified exceptions. See *Andrews* v. *Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 1022 (1996) (available for "excusable ignoran[ce]" or where defendant "affirmatively misled" plaintiff); *Irwin* v. *Department of Veterans Affairs, supra* (available where plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period"). The filing of an arbitration claim does not fit within any of the standard exceptions which allow tolling. Indeed, the plaintiff's claim more closely resembles those where tolling is not allowed. Such statutes are not tolled, for example, "by the possibility of an administrative settlement of the dispute." See *Campanella & Cardi Constr. Co.* v. *Commonwealth*, 351 Mass. 184, 187 n.4 (1966). See also *Arriaga-Zayas* v. *International Ladies' Garment Workers Union - P.R. Council*, 835 F.2d 11, 14 (1st Cir. 1987), cert. denied, 486 U.S. 1033 (1988). In those circumstances, as here, the fact that the plaintiff is, in a timely fashion, seeking to gain relief in a more efficient manner than litigation and by doing so puts the defendants on notice of her claim is not sufficient to toll the statute of limitations.

The plaintiff cites several Federal court decisions in support of her contention that arbitration may toll the statute of limitations. See, e.g., *Lancaster* v. *Air Line Pilots Ass'n Int'l*, 76 F.3d 1509, 1528 (10th Cir. 1996) ("If the objecting employee . . . pursues his nonjudicial remedies in good faith, the limitations period is tolled until the nonjudicial proceedings are completed. . . . This is so even if the employee's arbitration claim was futile because the arbitrator lacked authority to provide complete relief." [Citations omitted.]); *National R.R. Passenger Corp.* v. *Notter*, 677 F. Supp. 1, 5 (D.D.C. 1987) ("Courts have the equitable authority to toll the statute of limitations while a matter is referred to arbitration . . ."). Factually, however, these cases are distinguishable. The first case involved a fair representation case against a labor union, and the statute of limitations was tolled while the plaintiff pursued remedies within the union. Thus, the union's final position, and therefore the viability of the plaintiff's claim, was not clear until the proceedings were concluded. The second case cited involved a situation where a plaintiff had separate claims against the defendant in

both arbitration and court. The parties agreed to terminate the arbitration and consolidate all the claims in court. In those circumstances, the court concluded that "fairness dictate[d]" tolling the statute of limitations on the claims in arbitration. *Id.* at 5. To the extent that these cases suggest that there is a broader right to equitable tolling while claims are in arbitration, however, we reject them and agree with the view of the United States Court of Appeals for the First Circuit, which stated in response to an argument nearly identical to the one made to us:

> "This argument overlooks the means traditionally relied upon to avoid [the problem] — the bringing of suit within the limitations period, followed by a stay of such proceedings pending the results of arbitration. It is in the sense of requiring a stay, not of eliminating the requirement that suit be brought within [the statutory period], that procedural priority is given to arbitration."

*United States ex rel. Wrecking Corp. of Am.* v. *Edward R. Marden Corp.*, 406 F.2d 525, 526 (1st Cir. 1969). See *United States ex rel. Portland Constr. Co.* v. *Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976) ("A demand for arbitration does not toll the statute of limitations"). Thus the proper procedure for a litigant in the plaintiff's situation is to file a complaint in the Superior Court within the time allowed by the statute of limitations and have that action stayed pending the result of the arbitration. The plaintiff did not take this course of action, and therefore her claim fails.

(b) *General Laws c. 260, § 32.* The plaintiff next argues that G. L. c. 260, § 32, grants her a one-year period after the dismissal of her arbitration claim to file a complaint in the Superior Court. That section states: "If an action duly commenced within the time limited in this chapter is dismissed . . . for any matter of form . . . the plaintiff . . . may commence a new action for the same cause within one year after the dismissal . . . ." This statute does not aid the plaintiff's cause because the filing of a claim for arbitration is not an "action" within the meaning of c. 260, § 32. "As used in statutes of limitation, the word 'action' has been consistently construed to

pertain to court proceedings." *Carpenter* v. *Pomerantz*, 36 Mass. App. Ct. 627, 631 (1994), and cases cited.[6] See *Hemric* v. *Reed & Prince Mfg. Co.*, 739 F.2d 1, 3 (1st Cir. 1984) (claim filed with North Carolina Industrial Commission does not invoke protections of c. 260, § 32). *Liberace* v. *Conway*, 31 Mass. App. Ct. 40, 43 (1991) ("action" includes claim brought originally in Federal court), relied on by the plaintiff, does not lead to a different result because, even in applying § 32 "liberally," the Appeals Court was referring there to a case commenced in a court rather than arbitration or a proceeding before some other such body.

(c) *Provisions of the NASD code.* The plaintiff's final argument with regard to tolling is that §§ 10106 and 10307 of the NASD code acted to toll the statute of limitations. Section 10106 prohibits any party to the arbitration from "prosecut[ing] or commenc[ing] any suit, action, or proceeding" against any other party to the arbitration regarding the matters involved in the arbitration. NASD Manual 7513 (CCH 1996). Section 10307 (a) states: "Where permitted by applicable law, the time limitations which would otherwise run . . . for the institution of legal proceedings shall be tolled where a duly executed [arbitration claim] is filed by the Claimant(s). The tolling shall continue for such period as the [NASD] shall retain jurisdiction upon the matter submitted." *Id.* at 7574. The judge refused to consider the effect of these provisions on the tolling of the statute of limitations because these provisions were not raised until after trial. The judge was not required to take judicial notice of these provisions and did not err by refusing to consider these provisions on the merits. The general rule in Massachusetts is: "Courts do not take judicial notice of regulations; they must be put in evidence." *Passanessi* v. *C.J. Maney Co.*, 340 Mass. 599, 604 (1960).[7] The regulations are also "not the subject of such general knowledge and notoriety as to require judicial notice."

---

[6]Black's Law Dictionary 28 (6th ed. 1990) defines "[a]ction," "in its usual legal sense," as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law."

[7]This rule has been overridden in part by G. L. c. 30A, § 6, which requires judicial notice of regulations published in the Code of Massachusetts Regulations. See *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 926 (1980).

*Mendel Kern, Inc.* v. *Workshop, Inc.*, 400 Mass. 277, 282 (1987).[8]

3. The plaintiff next argues that certain rulings by the judge prejudiced her contract claim, and the jury's determination of when she reasonably should have discovered the defendants' misdeeds.[9]

(a) *Form and instructions of special question.* Although the plaintiff contends that special question no. 8 was erroneous, she did not object to the question. Special question no. 8 asked: "By what date did the plaintiff have information on which she knew or reasonably should have known facts upon which her claims are based?"[10] Because there was no objection to the question, her arguments raised here for the first time on appeal are waived. See *Draghetti* v. *Chmielewski*, 416 Mass. 808, 818 n.13 (1994).

The plaintiff further argues that it was error for the judge to refuse to give the instruction she requested based on *Riley* v. *Presnell*, 409 Mass. 239, 245-246 (1991).[11] The judge was correct in determining that she was not entitled to this instruction.

---

[8]The primary authority the plaintiff cites for the proposition that the NASD regulations should have been judicially noticed is inapposite. See *United States* v. *Goichman*, 407 F. Supp. 980, 993 (E.D. Pa.), aff'd, 547 F.2d 778 (3d Cir. 1976). In that criminal trial, the judge elected to take judicial notice of certain NASD bookkeeping regulations which were also Securities and Exchange Commission regulations.

[9]We need not consider the plaintiff's claims with regard to the testimony and instructions on damages because we have concluded that the plaintiff is entitled to no damages.

[10]The judge instructed the jury as follows in regard to answering the special question:

> "The question is not asking you to determine the date that [the plaintiff] actually concluded that she might have a claim against [the defendants].
>
> "Rather, it is asking you to determine by when [the plaintiff] had information available to her that was sufficient for her to have learned the essential facts upon which she has relied in asserting her claims in this case."

[11]*"PLAINTIFF'S REQUESTED INSTRUCTION NO. 38B: Discovery Rule*

" 'A cause of action will accrue when the plaintiff actually knows of the cause of action or when the plaintiff should have known of the cause of action.' *Riley* v. *Presnell*, 409 Mass. 239, 244 (1991). Only if the plaintiff *actually knew* or 'if a reasonable person in the plaintiff's position would have been

In *Riley* v. *Presnell, supra,* the plaintiff was suing his psychotherapist for persuading him to engage in sexual activity. In such a case, a straightforward application of the discovery rule is inappropriate because of the psychological influence the defendant had over the plaintiff. This case, however, is an ordinary case of concealment in which there is no evidence that the defendants had any psychological influence over the plaintiff which prevented her from exercising reasoned judgment. In any case there was no evidentiary basis for the instruction.

(b) *Instruction regarding existence of contract.* In a joint pretrial memorandum the parties agreed: "Shafnacker, IM&R and BAM entered into contracts pursuant to which [the advisors] were to provide her with investment advice." She argues that this statement should have been read to the jury and should have foreclosed the defendants' argument there was no contract. The defendants claim this argument fails on procedural grounds and on the merits. The plaintiff did not object when the judge declined to read the statement at the start of the trial. She then closed her affirmative case without requesting that the statement be read. At the close of the defendants' case, the plaintiff's counsel stated she had no rebuttal, but she wanted to have the statement read or entered as an exhibit to counter the defendants' argument that there was no contract. The defendants responded that there had in fact been written contracts between the parties, but that those were already in evidence and had been executed well after October, 1985. (The plaintiff had already recovered on all claims arising after October, 1985, in the NASD arbitration). The judge has substantial discretion in determining

---

able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run.' *Id.* at 245.

" 'The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint. . . . We look at "a reasonable person *in the position of the plaintiff*" (emphasis supplied). If such an initially reasonable person would, by reason *of the experience forming the basis for the plaintiff's complaint,* have his or her judgment altered in some way, such altered judgment then becomes the standard. The cause of action will not accrue until such an individual would have discovered the damage. . . . Accrual of the cause of action occurs when the ordinary reasonable person who had been subject[ed] to the [plaintiff's experience with the defendants] would have discovered that the injury was caused by that experience.' *Id.* at 245-246 (quoting *Bowen* v. *Eli Lilly & Co.,* 408 Mass. 204, 208 [1990]) (emphasis supplied)."

whether to allow rebuttal evidence. *Mason* v. *General Motors Corp.*, 397 Mass. 183, 193 (1986). Considering the time at which the plaintiff sought to have the statement read and because of the obvious uncertainties as to what the statement meant — no dates or identification of the contracts were given so there is no way to know which contracts are referred to, RJA was not listed as a party, and the terms of the contracts were not listed — there was no error in not reading the statement to the jury.

The plaintiff fails as a procedural matter in her claim that she was entitled to a directed verdict on the contract claim or an instruction from the judge that a contract existed as a matter of law. The plaintiff did request a directed verdict on her contract claim, but she gave no reasons as required by Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974). She did not follow that request with a request for a judgment notwithstanding the verdict. She also did not object to the lack of an instruction that there was in fact a contract, nor did she object to the form of the special question regarding the contract claim. In such circumstances, the plaintiff has failed to preserve the matter for appeal. See *Moy* v. *Jack Madden Ford Sales, Inc.*, 4 Mass. App. Ct. 102, 108 (1976) (denial of motion for directed verdict cannot be complained of on appeal where no grounds for that motion were presented).

(c) *Apparent authority instruction.* After the judge's instructions, which stated that the jury "must first determine whether or not [the advisors] had authority — that's a jury question — did they have any authority to enter into a contract," the plaintiff requested that the judge instruct on apparent authority.[12] The defendants pointed out that the instructions did not specify whom the advisors had to have the authority to bind. After some colloquy between counsel and the judge the plaintiff's counsel did not raise the issue further. The discussion suggests that the plaintiff's counsel may have been willing to leave the instruction as it stood because it left ambiguities that could have been detrimental to both sides. If that were the case, the issue would be waived. In any case, the judge did not abuse his discretion in refusing to instruct the jury on apparent authority.

---

[12]It appears that the plaintiff did not ask for instructions on apparent authority before the judge charged the jury inasmuch as she had argued that there was a contract as a matter of law and therefore had argued that no issue of authority should have been presented to the jury at all.

"Apparent . . . authority 'results from conduct *by the principal* which causes a third person reasonably to believe that a particular person . . . has the authority' " to bind the principal (emphasis supplied). *Hudson* v. *Massachusetts Prop. Ins. Underwriting Ass'n,* 386 Mass. 450, 457 (1982), quoting W.A. Seavey, Agency § 8D, at 13 (1964). The record was devoid of any evidence of the acts of RJA or IM&R which would have warranted a finding of apparent authority to bind them.[13]

(d) *Implied covenant of good faith and fair dealing instruction.* The judge denied the plaintiff's request for an instruction regarding the implied covenant of good faith and fair dealing. See *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.,* 414 Mass. 200, 211 (1993). The judge concluded that instructing on the covenant of good faith and fair dealing would unnecessarily confuse the jury and that the plaintiff had not presented any issue other than a straightforward breach of contract claim. The only two issues were whether a contract existed, and, if so, whether the investments made breached that contract. The allegations the plaintiff made to justify the instruction were insubstantial. First, the plaintiff claimed that the investments were explained in terms she did not understand, and second, she claimed that she was asked to sign blank forms which were later filled in with false information. The second claim was the subject of the fraud and securities violations on which the jury found for the defendants. The first is not so substantial that we should second guess the judge's determination that the evidence did not warrant the instruction. Contrast *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 471-473 (1991) (withholding approval of plan intended to force financial concessions did not directly breach terms of the contract but indicated bad faith and unfair dealing).

(e) *Admission of witness's testimony.* The plaintiff argues that the judge improperly admitted testimony of Michael DeGerolmo who was not on the pretrial list of witnesses because she lacked notice and an opportunity to depose the witness. She also argues

---

[13]The plaintiff is not correct in asserting that it is inconsistent for the defendants to claim that the advisors were agents for purposes of liability for breach of a fiduciary duty but lacked apparent authority to enter into contracts. The first issue hinges on the relationship between the principal and the agent, whereas the second is based on the scope of the agent's authority to act for the principal. See *Adams* v. *Hyannis Harborview, Inc.,* 838 F. Supp. 676, 691 (D. Mass. 1993), aff'd in part sub nom. *Adams* v. *Zimmerman,* 73 F.3d 1164 (1st Cir. 1996).

that DeGerolmo testified as to issues not within his personal knowledge.[14] A trial judge has "wide discretion" in such matters. *Kearns* v. *Ellis*, 18 Mass. App. Ct. 923, 924 (1984). In this case, DeGerolmo testified as a rebuttal witness and testified in part because another witness who had been listed by the defendants was unable to testify. The pretrial agreement between the parties stated that rebuttal witnesses need not be listed. There is no abuse of discretion in allowing the witness to testify.

As to the issue of the witness's personal knowledge, the witness testified primarily about the relationship of the advisors with IM&R after the witness began working for IM&R in October, 1984. To the extent that his testimony could be taken as applicable to the situation before October, 1984, the plaintiff failed to object on that basis, and has therefore not preserved the issue for appeal.[15]

(f) *Witness's invocation of Fifth Amendment privilege.* Lochet was called to testify. He refused to answer questions from either side, and invoked his privileges pursuant to the Fifth Amendment to the United States Constitution. The judge instructed the jury not to consider Lochet's testimony for any purpose, and that no negative inference should be drawn from his refusal to testify. The plaintiff argues that the judge should have instructed the jury that it could make a negative inference against RJA and IM&R. Unlike the criminal context, the invocation of Fifth Amendment privileges in a civil case may be used to draw a negative inference against the party refusing to testify. See *Labor Relations Comm'n* v. *Fall River Educators' Ass'n*, 382 Mass. 465, 471 (1981), and cases cited. That concept has been expanded to allow a reasonable inference against a corporate entity when its officers refuse to testify on behalf of the entity on that ground, *id.*, and, in some circumstances, to allow inferences against an employer where his employee has invoked the privilege. See *Veranda Beach Club Ltd. Partnership* v. *Western*

[14]The plaintiff's further argument stated in conclusory fashion in a footnote that the witness "should not have been permitted to testify regarding the reasonableness of various rates of return, and the validity of [the plaintiff's expert's] calculations." This treatment of the issue does not rise to the level of appellate argument, and we decline to consider it. See *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 270 n.1 (1995).

[15]The plaintiff did object to the question that elicited the remarks about which the defendant now complains on the ground that the question was leading, but that objection is insufficient to preserve the issue on appeal. See *Kagan* v. *Levenson*, 334 Mass. 100, 107 (1956).

*Sur. Co.*, 936 F.2d 1364, 1374 (1st Cir. 1991); *Data Gen. Corp.*
v. *Grumman Sys. Support Corp.*, 825 F. Supp. 340, 352-353 (D.
Mass. 1993), aff'd in part, 36 F.3d 1147 (1st Cir. 1994).
However, this expanded view of the rule has not been applied
where the relationship between the employee and the employer
was as attenuated as it was in this case. Lochet was an
independent agent of IM&R whose authority to act for IM&R
was one of the primary disputed matters in the case. Moreover,
Lochet's relationship had been severed with IM&R more than
seven years before the trial. Most importantly, however, no
reasonable inference could be drawn between Lochet's invoca-
tion of his privilege and the issues disputed in this appeal. From
Lochet's invocation of his privilege, one could reasonably infer
that Lochet acted wrongly and perhaps illegally in investing the
plaintiff's money. The jury, in fact, concluded just that. The
critical issue for the plaintiff on appeal is whether Lochet had
the authority to bind RJA and IM&R in a contractual relation-
ship with the plaintiff.[16] No such inference could be drawn from
Lochet's refusal to testify, and, therefore, the judge's ruling,
even if erroneous, would not have been prejudicial.

(g) *Burden of proof instruction.* The plaintiff objected at trial
to the instruction on burden of proof. She objects and argues on
appeal that it was error for the judge to state: "Another descrip-
tion of the state of mind which is satisfied by a fair preponder-
ance of the evidence is a *firm and abiding conviction* in the
truth of the proposition sought to be proved" (emphasis sup-
plied). Considering the charge as a whole we have concluded
that almost identical language adequately explained the
plaintiff's burden of proof. See *Stepakoff* v. *Kantar*, 393 Mass.
836, 843 (1985). We do, however, have reservations as to the
"firm and abiding conviction" language used in this case. Such
language is commonly used in the criminal context and is
derived in part from *Commonwealth* v. *Webster*, 5 Cush. 295,
320 (1850). To use such language in both the civil and criminal
context may be confusing and tends to meld two standards
which must remain quite distinct. While in this case the ac-
curacy of the remainder of the instruction would clarify any

---

[16]The plaintiff also suggests that Lochet's testimony may have had a critical
bearing on her common-law fraud claim. This claim would be time-barred,
however, based on the jury's determination when the plaintiff should have
known of her injuries, so any negative inference with respect to Lochet's
testimony would not have helped.

doubt in the minds of the jurors as to the meaning of preponderance of the evidence, such language should not be used in the civil context.

4. *Default judgment.* The plaintiff argues that she is entitled to default judgment of $199,269, plus interest, against the defaulting defendants, rather than the $53,000 imposed by the judge based on the jury's assessment of damages against RJA and IM&R.[17] The damages in this case are not for a sum certain, nor can they be ascertained by mere mathematical calculation. The damages would be based on what sort of investments would have been proper and reasonable to make for the plaintiff and how those investments would have performed. In such a case, the entry of judgment is not automatically the sum represented by plaintiff's counsel as the appropriate amount of damages. See *National Grange Mut. Ins. Co.* v. *Walsh*, 27 Mass. App. Ct. 155, 158 (1989) ("conclusory memorandum prepared by counsel and his representations" insufficient to sustain damage award against defaulting defendant). See also *Kansky* v. *Harrison*, 398 Mass. 1007, 1008 (1986); *Zegouros* v. *City Council of Fitchburg*, 381 Mass. 424, 425 n.1 (1980). Cf. *United Artists Corp.* v. *Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). The judge was entitled to consider the evidence at trial and the jury's verdict to determine the appropriate amount of damages, and there is no error in his conclusion that $53,000 was the appropriate sum.

*Judgments affirmed.*

---

[17]RJA and IM&R do not contest this claim by the plaintiff as they are not affected by our ruling on this issue.