APPEALS COURT 
 
 MICHAEL MARKS vs. ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE, INC., & others.[1]

 
 Docket:
 24-P-1016
 
 
 Dates:
 May 6, 2025 – November 5, 2025
 
 
 Present:
 Vuono, Henry, & Wood, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Limitations, Statute of. Consumer Protection Act, Unfair or deceptive act. Contract, Offer and acceptance, Performance and breach. Education, Private colleges and universities. Practice, Civil, Summary judgment, Statute of limitations.
 
 

             Civil action commenced in the Superior Court Department on November 9, 2022. 
            The case was heard by Michael A. Cahillane, J., on a motion for summary judgment.
            Dana Alan Curhan for the plaintiff.
            Edward V. Colbert, III, for Ross University School of Veterinary Medicine, Inc.
            WOOD, J.  The plaintiff, Michael Marks, brought this action against defendant Ross University School of Veterinary Medicine, Inc. (Ross), after he was dismissed from Ross's veterinary program.  The plaintiff, who was diagnosed at an early age with learning disabilities, alleged that Ross misrepresented that he "would be granted accommodations necessary to complete his education in veterinary medicine through its program therein."  He asserted claims of unfair or deceptive business practices, in violation of G. L. c. 93A, § 2 (c. 93A), misrepresentation, and breach of contract.  Ross filed a motion to dismiss.  A Superior Court judge converted the motion into a motion for summary judgment and granted it.  The judge concluded that the c. 93A and misrepresentation claims were barred by the statutes of limitations.  As to the breach of contract claim, the judge concluded that the plaintiff had failed to present any evidence of a contract that Ross had allegedly breached.  The plaintiff appeals.  Because the plaintiff presented a material dispute of fact on his breach of contract claim against Ross, we reverse summary judgment on that claim and otherwise affirm.[2]
            Background.  We summarize the relevant facts, viewing the evidence "in the light most favorable to the nonmoving party," here the plaintiff (citation omitted).  Trustees of Boston Univ. v. Clough, Harbour & Assocs., 495 Mass. 682, 683 (2025).  We accept as true the facts alleged by the plaintiff.  See Cole v. New England Mut. Life Ins. Co., 49 Mass. App. Ct. 296, 298 (2000).[3]
            Due to his diagnoses, the plaintiff received accommodations throughout his elementary, secondary, and college education.  Those accommodations included extended time and distraction-free exam environments for taking his exams.  After graduating from college, the plaintiff worked as a mechanical engineer for eight years.  He then decided to change careers and become a veterinarian.  He made inquiries to several schools about the available accommodations for learning disabilities.  As we discuss in more detail below, a Ross employee named Jeanne DiPretoro promised that if he attended its veterinary school, he would receive accommodations for his learning disabilities, such as the extended time he required to complete exams and other education-related tasks. In reliance on that promise, the plaintiff enrolled at Ross to study veterinary medicine.
            Ross offered a four-year program comprised of three initial years of traditional classroom learning on Ross's campus followed by a fourth year of clinical rotations at one of Ross's partner veterinary medical schools.  The plaintiff successfully completed his first three years at Ross, where he received accommodations for his learning disabilities.  In his fourth year, the plaintiff was assigned to Auburn University College of Veterinary Medicine (Auburn), for his clinical rotations.
            Shortly after starting at Auburn, the plaintiff met with Dr. Dan Givens, the Associate Dean of Academic Affairs, to discuss accommodations for his learning disabilities.  Givens informed the plaintiff that such accommodations were not available.  The plaintiff decided to continue at Auburn regardless.  After completing his first semester, the plaintiff began to struggle and ultimately failed his emergency and critical care rotation.  Givens advised the plaintiff to take a medical leave of absence before returning to complete the clinical rotations that he had failed.  While he was on leave, the plaintiff contacted Auburn's Office of Accessibility, where staff assured him that Auburn could and should, as required by law, provide accommodations such as extended time to complete his assignments.
            The plaintiff then returned to Auburn in 2016.  He initially received some of the promised accommodations but was not provided with any accommodations in his emergency and critical care rotation, which he took from May 31 to June 12, 2016.  The plaintiff failed that rotation for a second time.  Givens advised the plaintiff to take another leave of absence or to transfer to a different school to complete his clinical rotation.  However, Dr. Juan Samper, a liaison from Ross, told Givens and the plaintiff that he would not be permitted to transfer and that if he did not finish his program at Auburn, he would not finish the program at all.
            The plaintiff elected to take a second leave of absence.  He returned to Auburn again in 2017 and attempted to complete the rotations for a third time.  He was not successful; Auburn faculty deemed his performance inadequate.  Consequently, on February 24, 2017, the plaintiff was dismissed from the program.
            The plaintiff appealed the dismissal through Ross's internal grievance process.  In mid-2021 Ross denied the plaintiff's appeal.  Approximately seventeen months later, on November 9, 2022, the plaintiff filed this action.  Ross filed a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), arguing that any cause of action accrued on February 24, 2017, when he was dismissed from the Auburn program and therefore, the c. 93A and misrepresentation claims were barred by the statute of limitations.  Ross also argued that there was no evidence of a contract that Ross had breached.  A Superior Court judge converted the motion to dismiss into a motion for summary judgment and granted it.
            Discussion.  We review an order granting summary judgment de novo.  See Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  Summary judgment under Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002), is appropriate where "the moving party . . . 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law' based on the undisputed facts."  Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474 (2013), quoting Mass. R. Civ. P. 56 (c).  When a party moves for summary judgment on a claim that the opposing party will have the burden of proving at trial, the moving party must demonstrate "that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
            1.  Statute of limitations.  The plaintiff argues that the judge erred in concluding that his c. 93A claim was barred by the applicable four-year statute of limitations, G. L. c.  260, § 5A, and that his misrepresentation claim was barred by the applicable three-year statute of limitations, G. L. c. 260, § 2A.  See Passatempo v. McMenimen, 461 Mass. 279, 293 (2012).  The plaintiff argues that the statute of limitations began to run when he received a decision from Ross on his internal grievance appeal in mid-2021 and not upon his dismissal from the program on February 24, 2017.
            Our Legislature established appropriate time frames for raising claims, "ensuring the efficient, accurate, and equitable resolution of disputes" by enacting statutes of limitations.  Suburban Home Health Care, Inc. v. Executive Office of Health & Human Servs., Office of Medicaid, 488 Mass. 347, 348 (2021). Statutes of limitations typically begin to run when the cause of action accrues.  See Franklin v. Albert, 381 Mass. 611, 617 (1980).  See also Mass. R. Civ. P. 3, as appearing in 488 Mass. 1401 (2021).
            The applicability of a particular statute of limitations is a question of law.  See Premier Capital, LLC, 464 Mass. at 469. When a defendant invokes a statute of limitations as an affirmative defense and establishes that the action was brought outside the limitations period, the burden is on the plaintiff to prove that the claim was timely filed.  See Silvestris v. Tantasqua Regional Sch. Dist., 446 Mass. 756, 767 (2006).
            The plaintiff first asserts that the statute of limitations did not begin to run on February 24, 2017, when he was dismissed from Auburn, but rather, was equitably tolled until mid-2021, while he pursued the available grievance process offered by Ross.  We are not persuaded.
            "Equitable tolling is available in circumstances in which the plaintiff is excusably ignorant about the . . . statutory filing period."  Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996).  However, it "is to be used sparingly" (quotation and citation omitted).  Halstrom v. Dube, 481 Mass. 480, 485 (2019).  Also, it is "generally limited to specified exceptions."  Shafnacker v. Raymond James & Assocs., Inc., 425 Mass. 724, 728 (1997).  Those specified exceptions include excusable ignorance or where a defendant "affirmatively misled the plaintiff" (citation omitted).  Andrews, supra at 1022.  Neither exception applies here.  "The filing of an arbitration claim does not fit within any of the standard exceptions which allow tolling."  Shafnacker, supra at 728, 729 (noting that proper procedure would have been for party to file complaint within limitations period and have action stayed pending arbitration).  Nor does "the possibility of an administrative settlement of the dispute" toll the statute of limitations (quotation and citation omitted).  Shafnacker, supra.  To the contrary, over four decades ago, we held that the initiation of an administrative grievance proceeding does not toll a statute of limitations.  See Kaufman v. School Comm. of Boston, 18 Mass. App. Ct. 909, 910 (1984) (rejecting argument that filing of grievance tolled running of statutory limitation period).[4],[5]
            Alternatively, for the first time on appeal, the plaintiff argues that under the discovery rule, Ross's rejection of the plaintiff's grievance in mid-2021 was "the triggering event for purposes of the statute of limitations."  Putting aside waiver, the argument is unavailing because the plaintiff has misidentified the triggering event.
            The common-law discovery rule provides that a cause of action does not accrue until such time as "the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Harrington v. Costello, 467 Mass. 720, 727 (2014).  If there is no genuine dispute about when the plaintiff learned of the harm, and the statute of limitations has expired by the time the plaintiff filed his complaint, dismissal of the complaint under Mass. R. Civ. P. 12 (b) (6) or summary judgment is appropriate.  See Vinci v. Byers, 65 Mass. App. Ct. 135, 139 (2005).
            The plaintiff filed his complaint on November 9, 2022.  The dismissal letter sent by Auburn on February 24, 2017, states, in pertinent part:
"This letter concerns your academic performance during your clinical year at Auburn University which began May 12, 2014.  Based on the college's stated academic standards, your grades in clinical rotations necessitate that you withdraw from your clinical college year at the College of Veterinary Medicine as of February 24, 2017."
Based on this letter, at least as of February 24, 2017, there is no genuine factual dispute that the plaintiff knew or should have known that he had been harmed by Ross's alleged misrepresentations regarding accommodations.  Indeed, the plaintiff conceded as much in his appellate brief.[6]  Thus, even if we were to apply the discovery rule, the plaintiff's c. 93A and misrepresentation claims would fall outside the applicable statute of limitations.
            Accordingly, the judge did not err in granting judgment in Ross's favor on the plaintiff's c. 93A and misrepresentation claims based on the applicable statutes of limitations.
            2.  Breach of contract claim.  "To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was [1] an agreement between the parties; [2] the agreement was supported by consideration; [3] the plaintiff was ready, willing, and able to perform his or her part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result."  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).  At issue here are the first and fourth elements, whether the parties reached an agreement and if so, whether Ross committed a breach of it.  "Whether a contract exists is a question of fact."  LeMaitre v. Massachusetts Turnpike Auth., 70 Mass. App. Ct. 634, 637 (2007).  Here, the judge concluded that "there is nothing in the record . . . that a contract existed between Ross and the plaintiff which Ross breached."  We disagree.
            The plaintiff contends that Ross committed a breach of contract when it promised to provide him with reasonable accommodations and then failed to do so.  See Helfman v. Northeastern Univ., 485 Mass. 308, 327 (2020).  The plaintiff's claim is premised on oral representations made by Ross's representative, DiPretoro.  The plaintiff alleges that when he was deciding which veterinary program to attend, Ross, through DiPretoro, promised that if he attended its veterinary school, he would receive accommodations for his learning disabilities such as extended time he required to complete exams and other education-related tasks.  He alleges further that DiPretoro assured him that he would receive accommodations "while at [Ross]," and that the "entire reason" the plaintiff chose Ross "was due to the assurance that [he] would receive proper accommodation for his disabilities."  Ross interprets DiPretoro's promise that the plaintiff would receive reasonable accommodations "while at Ross," at most, as a promise that he would receive reasonable accommodations only "at Ross" and not at Auburn.
            In the light most favorable to the plaintiff, there is a genuine issue of material fact, to be resolved by the fact finder, about whether DiPretoro made the promise and, if so, whether the plaintiff and Ross entered into a contract that Ross would provide reasonable accommodations for all four years of the veterinary program.[7]  See Huang v. RE/MAX Leading Edge, 101 Mass. App. Ct. 150, 157-158 (2022).
            To the extent that Ross argues that there is no evidence that it committed a breach of such an agreement, we again disagree.  Viewed in the light most favorable to the plaintiff, there is a genuine issue of material fact about whether Ross breached any contract by failing to place the plaintiff in a fourth-year clinical program that would provide the same accommodations that Ross had provided in the first three years.  See id.
            Conclusion.  We affirm the entry of summary judgment for Ross on the counts for violation of c. 93A and misrepresentation.  We reverse the summary judgment for Ross on the breach of contract count and remand the case to the Superior Court for further proceedings consistent with this opinion.
So ordered.
 
footnotes
 
            [1] Devry Education Group, Inc.; Adtalem Global Education, Inc.; and Auburn University College of Veterinary Medicine, Inc. These codefendants were dismissed at the trial level.
            [2] Ross's codefendants also filed motions to dismiss, which the judge allowed.  Marks did not appeal from the judgments of dismissal of the codefendants.  Also, Ross does not challenge the judge's determination that jurisdiction over Ross is authorized under the Massachusetts Long Arm Statute, G. L. c. 223A.
            [3] Because Ross filed a motion to dismiss and the judge converted it into a motion for summary judgment, Ross never filed a statement of undisputed facts.  At the hearing on that motion, Ross's counsel did appropriately concede:  "Plaintiff filed an affidavit, which alleges facts . . . .  To the extent that those facts are based on Plaintiff's personal knowledge, it does create an issue of fact.  And we understand that the Court must consider those facts, construe them in the light most favorable to the Plaintiff." 
            [4] The cases on which the plaintiff relies to support his argument are distinguishable because they involve grievance proceedings filed in the employment discrimination context where the limitations periods were tolled under the applicable regulatory scheme.  See Silvestris, 446 Mass. at 770, citing 804 Code Mass Regs. § 1.10(2) (1999) (Massachusetts Commission Against Discrimination [MCAD] complaint timely under regulation that allowed aggrieved person to enter grievance proceeding within prescribed time period and file MCAD complaint after conclusion of such proceeding); see also Martins v. University Mass. Med. Sch., 75 Mass. App. Ct. 623, 628 (2009) (same).  By contrast, the plaintiff's decision to pursue an internal grievance proceeding at Ross did not trigger any statutory or regulatory tolling of the applicable limitations period.
            [5] There is no evidence that, after Auburn dismissed the plaintiff, Ross required the plaintiff to file an administrative grievance or did anything that induced him to delay filing this action, whether by suggesting that he file a grievance or otherwise.  This opinion does not address that circumstance.
            [6] It is undisputed that the plaintiff twice received a failing grade in his emergency medicine and critical care rotation and took a leave of absence after each rotation.  It is also undisputed that after he received the second failing grade, a faculty liaison from Ross advised him that if he did not complete the clinical rotations at Auburn, he "would not finish at all."  Therefore, when the plaintiff returned to Auburn for a third time, received a failing grade in an internal medicine rotation, and then received the dismissal letter on February 24, 2017, it was clear that his standing at Ross had been harmed.  Indeed, he responded by filing an administrative grievance with Ross challenging his dismissal, thus demonstrating his awareness of the harm.
            [7] Given our conclusion that there is a genuine issue of material fact concerning whether Ross promised the plaintiff accommodations and, if it did, whether that promise extended to the fourth year at other institutions, we need not reach the argument that the 2016 student handbook constituted a contract with sufficiently definitive promises that both Ross and the plaintiff understood.