NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-933

KENNETH R. IVESTER, THIRD

vs.

FRANCIS MURRAY, FOURTH, & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court, the jury returned a verdict in favor of the plaintiff, Kenneth R. Ivester, III, on his claim of conversion of a bulldozer by the defendant, Murray Enterprises, Inc., (Murray Enterprises) and awarded damages in the amount of $230,000, plus interest and costs for a total award of approximately $409,000.  Murray Enterprises appeals, contending that the judge erred in denying its motion for a directed verdict, and that the verdict slip and jury instructions contained prejudicial errors.[2]  We affirm.

_____

[1] Murray Enterprises, Inc.

[2] Although the judgment, as entered, was against both Murray Enterprises and Francis Murray, IV, only Murray Enterprises filed a notice of appeal.  The remaining defendants were

Background.  The jury could have found the following facts. Ivester works in the construction industry and owns and operates heavy equipment.  In 2015, he owned a CAT D5G bulldozer, which he used to perform excavation work on property owned by Glen and Danielle McKay in Lynnfield.  Ivester and the McKays had several disagreements, and at a certain point the McKays wanted Ivester to remove his bulldozer from their property.  When Ivester did not immediately respond to the request, the McKays called the Lynnfield police department seeking assistance and were advised that the bulldozer could be towed away.  The McKays then contacted Murray Enterprises and requested that the bulldozer, which weighs approximately 16,000 pounds and requires a flatbed truck to move, be taken away from their property.  Without notifying Ivester or allowing him to retrieve the bulldozer, Murray Enterprises arrived that same evening and towed the bulldozer to its lot in Woburn.  Thereafter, as Ivester testified, Murray Enterprises sent Ivester "fraudulent" bills and invoices related to the storage and maintenance of the bulldozer and refused to return the bulldozer to Ivester.[3]

---

dismissed by stipulation, motion, or directed verdict, and none of them have appeared here.

[3] Both Ivester and the owner of Murray Enterprises, Francis Murray, IV, testified at trial and each provided different versions of events.  Given the verdict reached by the jury, it is apparent that they were persuaded by Ivester's account.

After a number of unsuccessful attempts to retrieve the bulldozer and settle his dispute with Murray Enterprises, Ivester filed this action in 2016.[4]  Murray Enterprises filed a counterclaim for unpaid storage fees totaling about $260,000.  Ultimately, a jury trial was held in 2022.  At the conclusion of the trial, Murray Enterprises filed a motion for a directed verdict, which was allowed in part, and denied in part.  Specifically, the judge dismissed Ivester's claims of negligence and trespass to chattels.  With respect to Murray Enterprises' claim that it was entitled to a directed verdict because Ivester had failed to prove damages, the judge stated the following:

> "The testimony of the plaintiff as to jobs lost or inability to do . . . different jobs, and the amount of money . . . he would have earned to rent the bulldozer or use the bulldozer on projects was not proven with reasonable certainty.  However, I'm going to not direct out any additional claims in the complaint.  We will let the jury decide . . . and we can deal with the damages issues, if any, post judgment."

As previously noted, the jury, on special questions, returned a verdict for Ivester on the conversion claim only, finding that Murray Enterprises either

> "(a) [had] no right to possession of the bulldozer at the time of their acts of control or dominion over it; or (b)

_____

[4] Ivester's complaint alleged conversion, fraud, trespass to chattels, a violation of The Fair Debt Collection Practices Act, pursuant to 15 U.S.C. § 1692, unfair business practices, pursuant to G. L. c. 93A, civil conspiracy, a violation of his constitutional rights pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and negligence.

. . . had a right to possession of the bulldozer when they acted, but they failed to return the bulldozer to Mr. Ivester when he made a reasonable demand that they do so."

The jury answered "no" to the questions of whether Murray Enterprises committed a c. 93A violation or was unjustly enriched. Murray Enterprises' counterclaim was dismissed. Judgment entered accordingly, and this appeal followed.

Discussion. Murray Enterprises first argues that its directed verdict motion should have been allowed in its entirety because Ivester failed to submit any evidence of damages "other than his own speculative (and contradictory) testimony."[5] While we agree, as the judge observed, that the evidence of Ivester's damages was not overwhelming, we are satisfied that Ivester presented sufficient evidence upon which a reasonable jury could find nonspeculative damages in the amount returned. Ivester testified that the value of the bulldozer was "about $125 an hour at the time it was taken," amounting to "[a]bout a thousand dollars a day," and explained that "the average use of the machine is about three days a week, say for 42 weeks a year." This testimony adequately proved that Ivester had sustained

---

[5] Without citation to any authority, Ivester argues that Murray Enterprises has waived this claim because it failed to pursue any post-trial remedies as the judge recommended. While the better course would have been to do so, we exercise our discretion to consider the issue on the merits.

4

damages.[6]  See Selmark Assocs. v. Ehrlich, 467 Mass. 525, 545 (2014) ("While damages may not be determined by mere speculation or guess . . . that there may be an element of uncertainty as to the amount of damages does not bar their recovery" [quotations and citation omitted]).  Again, we recognize that Ivester did no more than provide the jury with his own calculations, none of which were supported by documentation.  However, nothing prevented the jury from relying on this testimony in reaching their verdict.  Furthermore, we cannot say on this record that the amount of damages was excessive.[7]  See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 404 (2005) ("a reviewing court should not disturb a jury's award of damages unless it is clearly excessive in relation to what the plaintiff's evidence has demonstrated damages to be").

Next, Murray Enterprises asserts that "prejudicial wording in the verdict slip and jury instructions" require us to vacate the judgment.  In both instances, Ivester's "demand" that Murray Enterprises return the bulldozer was described as "reasonable." The verdict slip posed the following question:

> "Did Mr. Murray either (a) have no right to possession of the bulldozer at the time of his acts of control or

---

[6] Contrary to Murray Enterprises' assertion, expert testimony was not required to prove damages.

[7] Ivester testified his damages amounted to $882,000 at the time of trial; however, the jury awarded a far lesser amount of $230,000.

5

dominion over it; or (b) he had a right to possession of the bulldozer when he acted, but he failed to return the bulldozer to Mr. Ivester when Mr. Ivester made a reasonable demand that he do so?"

Similarly, the judge instructed the jury that "Mr. Ivester may prove this element," by showing that "even though the defendants had a right to possession of the bulldozer when they acted, they failed to return the bulldozer when Mr. Ivester reasonably demanded he do so."

Murray Enterprises argues that the use of the word "reasonable" effectively caused the jury to improperly presume that Ivester's demand for the bulldozer's return was appropriate notwithstanding that Ivester had not paid Murray Enterprises its usual and customary storage fees. According to Murray Enterprises, had "reasonable" been better defined or explicated, the jury would have returned a verdict in its favor. In addition, Murray Enterprises claims that this error "sabotaged" its counterclaim which sought reimbursement for tow and storage charges.

As an initial matter, we question whether this issue is properly before us. With regard to the verdict slip, we conclude that the record does not support Murray Enterprises' claim that it objected to the use of the word "reasonable." The relevant portion of the transcript at which the parties discussed the verdict slip is inaudible, and Murray Enterprises

6

did not attempt to clarify or reconstruct the record as it should have done.[8]  In the absence of any clarification or reconstruction of the record, we are not able to conclude that a proper objection was lodged and, as a result, any challenge to the verdict slip is waived.  Shafnacker v. Raymond James & Assocs., 425 Mass. 724, 731 (1997) (claimed error in verdict form waived by failure to object at trial).

   We reach a different conclusion regarding the jury instructions.  Although Murray Enterprises requested some additional language with regard to the jury instructions, it did not clearly object during the charge conference or after the judge instructed the jury as to the use of the word "reasonable."[9]  See Mass. R. Civ. P. 51, 365 Mass. 816 (1974) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which

_____

   [8] Counsel for Murray Enterprises stated the following:  "I have an objection to the use of the word [Whispering at Sidebar at 2:24:28 p.m.] 'cause it implies [Whispering at Sidebar at 2:24:30 p.m.]," after which counsel for Ivester began speaking, "[Crosstalk at 2:24:30 p.m.] [Whispering at Sidebar at 2:24:35 p.m.]," which is when the judge acknowledged the objection.

   [9] When initially discussing the jury instructions, counsel for Murray Enterprises told the judge, "I was going to suggest . . . fourth, that the defendants either A or B, they had a right to possession of the bulldozer when they acted, but they failed to return the bulldozer to Mr. Ivester when he made a reasonable demand that they do so.  I think I'd be okay with that."

he objects and the grounds of his objection").  It was incumbent upon Murray Enterprises to preserve its challenge with an objection to "save [its] appellate rights."  Flood v. Southland Corp., 416 Mass. 62, 66 (1993).  That said, we recognize that the judge noted counsel made objections and stated that they were preserved.  We therefore address the merits of the challenge to the jury instructions.[10]

"When reviewing jury instructions to which there has been an objection, we conduct a two-part test:  'whether the instructions were legally erroneous, and (if so) whether that error was prejudicial.'"  Kelly v. Foxboro Realty Assocs., LLC, 454 Mass. 306, 310 (2009), quoting Masingill v. EMC Corp., 449 Mass. 532, 540 n.20 (2007).  Here, the judge informed the jury that Ivester "must prove that the defendants exercised a serious measure of control over the bulldozer through some act . . . after a reasonable demand is made" (emphasis added).  This sentence, given the insertion of the article "a," did not convey

_____

[10] After he instructed the jury, the judge called the attorneys to a sidebar conference and asked if there were any objections.  There were none.  However, because the judge informed counsel that their prior objections were preserved, we apply the more favorable standard of review.  The judge stated the following:  "I'll just state for the record . . . [t]wo things. One, we had a charge conference and earlier . . . arguments were made, objections were made, and also the counsel have submitted written jury instructions.  So, your rights are preserved as to what you've requested in writing and already argued."

8

any presumptions.  In addition, the judge's remaining instructions did not include any language which could be interpreted as indicating a presumption in favor of Ivester.  As such, there was no error.

<u>Judgment affirmed</u>.

By the Court (Vuono,
   Desmond & Toone, JJ.[11]),

Clerk

Entered:  December 8, 2025.

---

[11] The panelists are listed in order of seniority.