VICTOR G. DRAGONE *vs.* ANTONIO J. DELL'ISOLA.

Middlesex.    November 3, 1954. — December 8, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Broker*, Commission. *Fraud.*

An owner of land was not liable to a real estate broker for a commission
where it appeared that upon being requested by the owner to procure
a customer for the land at a specified price the broker negotiated
with a prospective customer but never received any definite purchase
offer from him, that shortly thereafter, through one having no knowl-
edge of such negotiations and "acting purely as a friendly gesture
and . . . not interested in any commission," the owner, also without
knowledge of the broker's negotiations, made an oral sale and purchase
agreement with the same customer at a lower price, that the owner
immediately informed the broker thereof and then learned from him
of his negotiations, and that subsequently the sale so agreed upon was
consummated; it could not be said that the owner acted in bad faith.

CONTRACT.    Writ in the Superior Court dated February
25, 1953.

The action was heard by *Brogna*, J.

*Edward J. Barshak*, (*Morris T. Silverstein* with him,) for
the defendant.

*Philip Mondello*, for the plaintiff.

RONAN, J.    This is an action of contract brought by a
broker to recover a commission for the sale of the defend-
ant's land.   The judge made findings of material fact, found
for the plaintiff, and reported to this court the question
whether he was warranted upon the pleadings and the
findings of fact in finding for the plaintiff; if not, judgment
was to be entered for the defendant.

The following appeared from the findings of fact.   The
defendant requested the plaintiff to procure a customer to
buy the defendant's land for the sum of $10,000.   The
plaintiff sought a customer and informed the defendant
that the price was too high, and the defendant fixed the

selling price at $8,500. The plaintiff then saw his customer, one Grande, or a representative of his corporation, who stated that the price was a little too high. Shortly thereafter one D'Angelo, an assessor of Everett where the land was located, who had no knowledge of what had taken place between the plaintiff and Grande and who "was acting purely as a friendly gesture and was not interested in any commission," saw the defendant, inquired of him the lowest price he would take, and was told that he would sell the property for $8,000. D'Angelo told Grande of the price and the latter agreed to buy the property. The defendant on being informed of the acceptance of Grande told the plaintiff that he had sold the property, and when the plaintiff inquired who the purchaser was the defendant told him it was Grande and the plaintiff replied that Grande was his customer. That was the first time the defendant knew that the plaintiff had ever spoken to Grande about the sale of the property. The defendant subsequently entered into a written buy and sell agreement and sold the property to Grande's corporation. Further findings were to the effect that the plaintiff's efforts were the active and efficient cause of the agreement of sale; that the failure of the plaintiff to disclose the identity of his customer was not material, and was not due to bad faith or a violation of any fiduciary relationship; that when the defendant executed the agreement to sell he was conscious that he might have to pay a commission to the plaintiff; and that in doing so he did not act in good faith.

Notwithstanding the finding that the plaintiff was employed[1] by the defendant, the subsidiary findings concerning the relationship between the parties show that there was no employment contract binding the plaintiff to perform and the defendant to pay for his services, *Des Rivieres* v. *Sullivan*, 247 Mass. 443; *Elliott* v. *Kazajian*, 255 Mass. 459; *Bartlett* v. *Keith*, 325 Mass. 265, but that it was the

[1] There are instances where there has been a bilateral agreement of employment between a broker and his principal, *Coan* v. *Holbrook*, 327 Mass. 221; *John T. Burns & Sons, Inc.* v. *Brasco*, 327 Mass. 261, but this is not one of them.

ordinary situation where the defendant did no more than to promise to pay a commission to the plaintiff if he procured a customer ready, able, and willing to buy upon the terms given by the defendant to the plaintiff. The defendant's offer was not supported by any consideration. The plaintiff was free to disregard the offer or attempt to undertake the called for performance, and the defendant was also free to withdraw the offer at any time or to sell the land to a customer whom he himself procured before he had any notice that the plaintiff had already procured a customer. *Kimball* v. *Hayes,* 199 Mass. 516. *Rowe* v. *Koutrouba,* 263 Mass. 493. The offer on the defendant's part would ripen into a unilateral contract when the plaintiff produced such a customer. *John T. Burns & Sons Inc.* v. *Hands,* 283 Mass. 420, 422. *Maher* v. *Haycock,* 301 Mass. 594. *Bartlett* v. *Keith,* 325 Mass. 265, 267–268.

The plaintiff, however, never produced a customer who was able, ready, and willing to pay $8,500. The plaintiff never received any offer from Grande to pay any particular price. He was not entitled to a commission unless he showed performance in substantial compliance with the defendant's offer. *Walsh* v. *Grant,* 256 Mass. 555. *Pagum* v. *White,* 259 Mass. 437. *Palmer* v. *Cherney,* 270 Mass. 551. *Chapin* v. *Ruby,* 321 Mass. 512.

The plaintiff contends that he was prevented from closing the transaction with his customer because the defendant himself made a sale to the customer. But the conclusion reached by the judge that the defendant did not act in good faith cannot stand in the light of the other reported facts. Fraud or bad faith is not to be presumed but must be proved as a fact. *Kerrigan* v. *Fortunato,* 304 Mass. 617. *Cohen* v. *Santoianni,* 330 Mass. 187. The owner cannot act in bad faith, and that means that he cannot revoke the broker's authority for the purpose of avoiding the payment of a commission to him and then sell the property to the customer procured by the broker. *O'Connell* v. *Casey,* 206 Mass. 520. *Glassman* v. *Barron,* 277 Mass. 376. *Leitner* v. *Foster,* 280 Mass. 128. *Palmer Russell Co.* v. *Rothenberg,*

328 Mass. 477, 481. It was only when the defendant telephoned to the plaintiff revoking his authority that he learned that the plaintiff had been negotiating with Grande. Besides, it is difficult to see how the defendant could intend to defraud the plaintiff of a commission when the defendant had agreed to sell to Grande before he knew that the plaintiff had dealt with Grande. It is true that the defendant might have set up the statute of frauds if Grande attempted to enforce the oral agreement, but the defendant was not required to do so to avoid an agreement he honestly made to sell the property. His subsequent conveyance to Grande or his corporation did not in our opinion amount to bad faith upon the part of the defendant. *Cadigan* v. *Crabtree,* 186 Mass. 7, 12–13. *Smith* v. *Kimball,* 193 Mass. 582, 585. *Chamberlain & Burnham, Inc.* v. *Cohn,* 261 Mass. 322. *Chamberlain* v. *New England Dressed Meat & Wool Co.* 279 Mass. 462.

In accordance with the terms of the report judgment must be entered for the defendant.

*So ordered.*